**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| BETTY J. PINSON, | ) | Civil Action No. 8:05-cv-2389-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** and **OPINION** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, codified at 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision, denying Betty J. Pinson's ("plaintiff") claim for Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("Report") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the Commissioner's final decision be reversed and plaintiff be awarded benefits. The Commissioner timely objected to the magistrate judge's recommendation. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a magistrate judge's Report within ten days after being served with a copy).

**I.    PROCEDURAL BACKGROUND**

Plaintiff filed an application for DIB on July 20, 2001, alleging disability beginning January 2, 2001, due to osteoarthritis and degenerative arthritis. (Tr. 48.) Plaintiff's application was initially denied and denied again on reconsideration. (Tr. 36-46.) Plaintiff filed a timely request for a hearing, and Administrative Law Judge Albert A. Reed (the "ALJ") conducted the hearing and denied plaintiff's application on May 8,

2003. (Tr. 28.) The Appeals Council denied plaintiff's request for review on July 15, 2005 (Tr. 7-11), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

## II.     PERTINENT FACTS

At the time of the administrative hearing, plaintiff was 51 years old and claimed to have a seventh grade education[1] with past relevant work experience as a draw wind operator and sewing machine operator. Since 1998, plaintiff has been under the care of neurosurgeon Franklin Epstein for "cervical and lumbar degenerative disc disease." (Tr. 116.) She has also seen her family practitioner, Dr. William Sawyer. Dr. John Handy and Dr. Melissa Richardson both examined plaintiff at least once, and Dr. Seham El-Ibiary, a state medical consultant, reviewed plaintiff's medical records.

On February 2, 2001, Dr. Epstein examined plaintiff and described her as having an "unequivocal, premature, and rather advanced spinal degenerative disc disease." (Tr. at 116.) He further opined that plaintiff was no longer capable of performing competitive employment and strongly urge[d] her "to seek permanent retirement." (Tr. at 116.)

Plaintiff visited Dr. Sawyer several times complaining of shoulder, neck, and back pain (Tr. 144-48, 179-80, 183), and on August 9, 2002, Dr. Sawyer completed a Physical Capacities Evaluation. He indicated that plaintiff could occasionally lift or carry zero to ten pounds. (Tr. 177-78.) Dr. Sawyer suggested that plaintiff could sit for

---

[1] The record contains conflicting testimony regarding plaintiff's education. At the hearing, plaintiff testified that she only completed the 6th grade (Tr. 201); however, the record also states that her highest grade level completed was 7th grade (Tr. 75) and on another occasion 9th grade (Tr. 136).

three hours and stand or walk for two hours in an eight-hour workday, (Tr. 177), and he stated that plaintiff could not use her hands adequately for simple grasping, fine manipulation, or repetitive motion tasks. (Tr. 178.) He also concluded that plaintiff could not climb, stoop, kneel, crouch, or crawl. (Tr. 178.) Dr. Sawyer identified plaintiff's pain level as "moderate," which is defined as "constitut[ing] a significant handicap . . . ." (Tr. at 178.)

On January 8, 2001, plaintiff was seen by internist and rheumatologist Dr. John Handy for hand and hip pain. (Tr. 109.) Dr. Handy's examination revealed some tendinitis of the thumb tendon in her wrist and tenderness in her right hip. (Tr. 109.) While Dr. Handy suggested a possible psychiatric component to plaintiff's condition, he stated that plaintiff's job was "incompatible with her and I doubt whether a physician can make much difference in that regard." (Tr. at 110.)

The South Carolina Vocational Rehabilitation Department referred plaintiff to Dr. Melissa Richardson for a consultative examination. (Tr. 136.) Plaintiff told Dr. Richardson that she "hurts pretty much throughout her entire body." (Tr. 136.) An x-ray of the lumbar spine, reviewed by Dr. Richardson, showed degenerative disc disease. (Tr. 138.) Further evaluation revealed a supple neck, no tenderness over the spinous process in the cervical or lumbar region, and full range of motion of the shoulders, elbows, wrists, and fingers bilaterally. (Tr. 137.) Plaintiff also had full range of motion of the hips, knees, and ankles bilaterally, but she was unable to do any kind of leg extension. (Tr. 137.) Dr. Richardson listed her impressions as: (1) a history of cervical and lumbar degenerative disc disease, per Dr. Epstein's notes; (2) a history of depression and

3

anxiety; and (3) bilateral carpal tunnel syndrome in the past with good grip strength bilaterally. (Tr. 137.)

Dr. Seham El-Ibiary, a medical consultant for the state agency, reviewed plaintiff's medical records on October 9, 2001. (Tr. 169-76.) In the Physical Residual Functional Capacity Assessment, Dr. El-Ibiary indicated that plaintiff could occasionally lift or carry fifty pounds and frequently lift or carry twenty-five pounds. (Tr. 170.) Dr. El-Ibiary also suggested that plaintiff could stand, walk, or sit for about six hours in an eight-hour workday. (Tr. 170.)

The ALJ made the following findings after considering evidence from the hearing and in the record:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's arthritis and degenerative disc disease are severe impairments, based upon the requirements in the Regulations (20 CFR § 404.1521).

4. The medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR § 404.1527).

>  7. The claimant has the following residual functional capacity: light work requiring the lifting/carrying of up to 20 pounds occasionally and 10 pounds frequently. She is able to stand/walk for up to 6 hours per day. She is able to sit for at least 6 hours per day.
>
>  8. The plaintiff's past relevant work as an unskilled sewing machine operator did not require the performance of work-related activities precluded by her functional capacity (20 CFR § 404.1565).
>
>  9. The claimant's medically determinable arthritis and degenerative disc disease do not prevent the claimant from performing past relevant work.
>
>  10. The claimant was not under a "disability" as defined by the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(e)).

(Tr. 27-28.) The magistrate judge took exception to these findings and recommended reversing the ALJ's decision and awarding plaintiff benefits.

### III.  SCOPE OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's Report to which a specific, written objection is made. 28 U.S.C.A. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or

modify the Report of the magistrate judge, in whole or in part, or may recommit the matter to her with instructions for further consideration.  28 U.S.C.A. § 636 (b)(1).

Although this court may review the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Substantial evidence" has been defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citation omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if h[er] decision is supported by substantial evidence."  Id.  Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."  Hays, 907 F.2d at 1456.

## IV.    DISCUSSION

The Commissioner objects to the magistrate judge's finding that the ALJ did not accord plaintiff's treating physicians' opinions the appropriate weight.  According to the Commissioner, substantial evidence supported the ALJ's findings that: (1) plaintiff could

perform light work despite her impairments; (2) her residual functional capacity did not preclude her from performing her past relevant work; and (3) she was not disabled within the meaning of the Social Security Act. Additionally, the Commissioner contends that, if this court determines the substantial evidence of record did not support the Commissioner's decision, the proper remedy is to remand the case for further administrative proceedings rather than to reverse for payment and benefits.

The Commissioner is charged with determining the existence of a disability. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 CFR § 416.920) (internal citations omitted).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, the burden then shifts to the

Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience.  See Walls, 296 F.3d at 290.

    a.    The ALJ failed to give appropriate weight to the treating physicians' testimony.

Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ.  See, e.g., Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (holding that treating physician's opinion is entitled to great weight if not contradicted by persuasive evidence); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1987) (stating that the treating physician's opinion is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" and should be disregarded "only if there is persuasive contradictory evidence").  When evaluating the opinion of a treating physician, the ALJ must consider whether the opinion should be given controlling weight. See 20 CFR § 404.1527(d)(2).  Controlling weight is afforded where the opinion is: (1) from a treating source; (2) a medical opinion concerning the nature and severity of the plaintiff's impairment; and (3) well-supported by medically acceptable clinical and laboratory diagnostic techniques.  See S.S.R. 96-2p; 20 CFR § 416.927.  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Hunter, 993 F.2d at 35 (noting that "the ALJ holds the discretion to give less weight to the testimony of a treating physician

in the face of persuasive contrary evidence.").

According to the Social Security Regulations, when an ALJ determines that a treating physician's opinion should not be given controlling weight, the ALJ must still consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) the consistency with the record as a whole; (5) the physician's area of specialization; and (6) other factors which tend to support or contradict the opinion. See 20 CFR 416.927. Finally, the ALJ must always explain the weight afforded a treating physician's opinion. See Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (remanding a claim for disability benefits because the ALJ did not explain adequately why he credited one doctor's views over those of another doctor); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983); (stating "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."); see also 20 CFR § 404.1527(d)(2) (stating "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

The ALJ discounted Dr. Sawyer's assessment that plaintiff could sit for only three hours and stand or walk for two hours in an eight-hour workday and occasionally lift or carry zero to ten pounds, because the restrictions were "not supported by the weight of [Dr. Sawyer's] own testimony or by medical evidence considered as a whole." (Tr. at 26.) The ALJ concluded that Dr. Sawyer based his assessment not on medical evidence, but merely on the claimant's self-reported pain. (Tr. 26.) The ALJ also discounted Dr.

Epstein's opinion that plaintiff was no longer capable of performing competitive employment.  (Tr. 26.)

In this case, the court finds that medical evidence does support the treating physicians' opinions.  Both Dr. Epstein and Dr. Sawyer have treated the plaintiff since at least 1999, including instances of bi-weekly examinations.  (Tr. 121, 147.)  The treating physicians performed back surgery, injected muscle relaxants, and prescribed anti-inflammatory medication; however, the chronic pain from arthritis and degenerative disc disease remains.  (Tr. 215-17.)

After reviewing an MRI on June 8, 2000, Dr. Epstein concluded that plaintiff suffered from degenerative arthritis in her lower spine.  (Tr. 118.)  A lumbar myelography on July 17, 2000 revealed a mild disc bulge at L3-4.  (Tr. 123.)  In January of 2001, Dr. Sawyer examined plaintiff and noted tenderness in her right hip and "a lot of swollen joints as before."  (Tr. at 144.)  On September 25, 2001, an x-ray showed the presence of degenerative disc disease.  (Tr. 138.)  The only testimony contradicting the treating physicians' opinions exists in the testimony of a state medical consultant, who reviewed the medical records without an examination of plaintiff.  (Tr. 160-76.)  Based on the longevity and frequency of the treating doctors' relationship with plaintiff and objective medical support for their opinions, the ALJ's decision to discredit the treating physicians' testimony was not supported by substantial evidence.  The ALJ therefore erred by failing to give the treating physicians' opinions controlling weight.

    b.    <u>Plaintiff cannot return to her past relevant work as a sewing machine operator.</u>

The ALJ determined that plaintiff could perform light work and return to her past

relevant work as a sewing machine operator.  The ALJ referenced the <u>Dictionary of Occupational Titles</u> in categorizing sewing machine operation as light work.  (Tr. 27.)  The Commissioner defines light work as work requiring lifting no more that 20 pounds at a time with frequent lifting or carrying up to 10 pounds.  20 CFR § 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  <u>Id.</u>  As discussed above, the ALJ should have accorded the treating physicians' opinions controlling weight.  Dr. Sawyer opined that plaintiff could sit for only three hours and stand for two hours in an eight-hour workday, and occasionally lift or carry zero to ten pounds.  (Tr. 177-78.)  This assessment fails to meet the Commissioner's criteria for light work.  Accordingly, once Dr. Sawyer's opinion is given controlling weight, it is clear that plaintiff lacks the capacity for light work and that the ALJ erred in determining plaintiff was capable of performing her past relevant work.

        <u>c.</u>      <u>Remand for further administrative proceedings is appropriate.</u>

While this court agrees that plaintiff is unable to return to her past relevant work, the magistrate judge incorrectly concluded that benefits should be awarded at this time.  After a claimant is found incapable of performing past relevant work, a determination must be made as to whether the claimant could perform other jobs.  20 CFR § 404.1520(f); <u>Mastro</u>, 270 F.3d at 177 ("the final consideration [in determining DIB] looks to whether the impairment precludes the claimant from performing other work.")  The burden of proof shifts to the Commissioner to provide evidence of a significant

11

number of jobs in the national economy that the claimant could perform, considering medical conditions, functional limitations, age, education, and work experience. See Walls, 296 F.3d at 290; See also Lester v. Schweiker, 683 F.2d 838 (4th Cir. 1984). In making findings as to transferability of skills, the ALJ will ordinarily require the testimony of a vocational expert. Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

In this case, the Commissioner has not yet considered whether plaintiff is capable of work other than her past relevant work. There is no evidence of other work that plaintiff could perform, considering her medical conditions, functional limitations, age, education, and work experience. The case is therefore remanded for further inquiry into whether plaintiff could perform work other than her past relevant work.

### V.     CONCLUSION

After careful examination of the record as a whole, the court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is therefore **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this order.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 30, 2006**
**Charleston, South Carolina**